IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **BILLY BAGBY and JUSTIN MARK,** Individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| *Plaintiffs*, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| **MIDWAY OILFIELD CONSTRUCTORS, INC. D/B/A MIDWAY ENERGY SERVICES** | CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |
| *Defendant.* | |

## ORIGINAL CLASS/COLLECTIVE ACTION COMPLAINT

Billy Bagby and Justin Mark ("Plaintiffs") brings this action individually and on behalf of all current and former employees (hereinafter "Plaintiffs and the Putative Class Members") who worked for Midway Oilfield Constructors, Inc. d/b/a Midway Energy Services ("Midway") and were paid hourly but no overtime from three years preceding the filing of the Original Complaint and through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and pursuant to the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq*.

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while their PMWA claims are asserted as a class action under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 23.

# I.
# OVERVIEW

1. This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq.*, and a class action pursuant to the PMWA and FED. R. CIV. P. 23, to recover overtime wages.

2. Plaintiffs and the Putative Class Members are those similarly situated persons who worked for Midway since July 19, 2014 and through the final disposition of this matter, and were paid hourly for all hours worked in the field, but did not receive overtime for all hours worked over forty (40) in each workweek.

3. Midway improperly classified Plaintiffs and the Putative Class Members as independent contractors.

4. Plaintiffs and the Putative Class Members routinely work (and worked) in excess of 40 hours per workweek; however, Plaintiffs and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

5. The decision by Midway not to pay overtime compensation to Plaintiffs and the Putative Class Members was neither reasonable nor in good faith.

6. Midway knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

7. Plaintiffs and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or the PMWA.[1] Specifically, Plaintiffs and

---

[1] All exemptions are to be narrowly construed and the burden of proof to establish them lies with the employer. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001); *see also Davis v. Mountaire Farms, Inc.,* 453 F.3d 554, 556 (3d Cir. 2006).

the Putative Class Members performed routine and manual labor type job duties in the oilfield for Midway and its clients.

8. Plaintiffs and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b) and to recover all unpaid overtime and other damages owed under the PMWA as a class action pursuant to FED. R. CIV. P. 23.

9. Plaintiffs pray that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10. Plaintiffs also pray that the Rule 23 class is certified as defined herein, and the Plaintiffs be designated Class Representative(s).

## II.
## THE PARTIES

11. Plaintiff Billy Bagby ("Bagby") worked for Midway within the meaning of the FLSA within the relevant three-year period. Plaintiff Bagby did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

12. Plaintiff Justin Mark ("Mark") worked for Midway within the meaning of the FLSA and the PMWA within the relevant three-year period. Plaintiff Mark did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

13. The Putative Class Members include those current and former employees who worked for Midway since July 19, 2014 and have been subjected to the same illegal pay system under which Plaintiff Bagby worked and was paid.

---

[2] The written consent of Billy Bagby is attached hereto as Exhibit "A."

[3] The written consent of Justin Mark is attached hereto as Exhibit "B."

14. Midway Oilfield Constructors, Inc. d/b/a Midway Energy Services ("Midway") is a Texas for-profit corporation, and may be served through its registered agent for service of process: **Billy A. Smith, 12627 N. E. Hwy 21, Midway, Texas, or wherever he may be found.**

### III.
### JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

16. This Court has supplemental jurisdiction over the PMWA claims pursuant to 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Midway because the cause of action arose within this District as a result of Midway's conduct within this District.

18. Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

19. Specifically, Midway is headquartered in Midway, Madison County, Texas, which is located in this District and Division.

20. Venue is proper in this this District pursuant to 28 U.S.C. § 1391.

### IV.
### ADDITIONAL FACTS

21. Midway has been in the oilfield construction business since 1981. From its early beginnings, Midway has expanded to currently offer services and expertise to customers within the upstream, midstream and downstream sectors of the oil and gas industry throughout the United States.[4]

---

[4] http://www.midwayenergyservices.com/home.

22. Specifically, Midway's diverse energy services include: oil and gas field construction, pipeline and midstream facility construction, plant construction and maintenance, trucking and disposal, and rental services.[5]

23. Midway currently has operations in Texas, Oklahoma, Mississippi, Ohio and Pennsylvania.[6]

24. To provide their services, Midway employed numerous workers—including the individuals that make up the putative or potential class. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work in the oilfield.

25. Plaintiff Bagby worked for Midway as a Rig Welder from approximately February 2014 through March 2015 throughout Southern and Eastern Ohio.

26. Plaintiff Mark worked for Midway as a Rig Welder from approximately January 2013 through May 2015 throughout Southern and Eastern Ohio as well as Northern Pennsylvania.

27. Midway paid Plaintiffs and the Putative Class Members an hourly wage for all hours worked. Specifically, Plaintiffs Bagby and Mark were paid $45.00 per hour worked but did not receive overtime compensation at the required rate of time-and-one-half for all hours worked over forty (40) each workweek.

28. Although it is well-known that blue-collar oilfield workers like Plaintiffs and the Putative Class Members are **_not exempt_** from overtime, Midway did not pay Plaintiffs and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

---

[5] http://www.midwayenergyservices.com/About/our-mission.

[6] http://www.midwayenergyservices.com/About/locations.

29. Plaintiffs and the Putative Class Members' primary job duties included performing daily checklists, assisting with the preparation of equipment, and performing other oilfield related functions on various job sites.

30. Upon information and belief, Plaintiffs and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by Midway and/or its clients.

31. Upon further information and belief, Plaintiffs and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by Midway and/or its clients.

32. Virtually every job function was pre-determined by Midway and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties. Plaintiffs and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

33. Moreover, Plaintiffs and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

34. Indeed, Plaintiffs and the Putative Class Members are blue-collar workers. They rely on their hands, physical skills, and energy to perform manual and routine labor in the oilfield.

35. Plaintiffs and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

36. Plaintiffs and the Putative Class Members did not (and currently do not) have the authority to hire or fire other employees, and they were not (and currently are not) responsible for making hiring or firing recommendations.

37. Moreover, Plaintiffs and the Putative Class Members did not (and currently do not) supervise two or more employees.

38. Plaintiffs and the Putative Class Members' duties did not (and currently do not) concern work directly related to the management or general business operations of Midway or its customers.

39. Midway determined the hours Plaintiffs and the Putative Class Members worked.

40. Midway set Plaintiffs and the Putative Class Members' pay and controlled the number of hours they worked.

41. Midway set all employment-related policies applicable to Plaintiffs and the Putative Class Members.

42. Midway maintained control over pricing and marketing. Midway also chose equipment and product suppliers.

43. Midway owned or controlled the equipment and supplies that Plaintiffs and the Putative Class Members used to perform their work.

44. Midway had the power to hire and fire Plaintiffs and the Putative Class Members.

45. Midway made all personnel and payroll decisions with respect to Plaintiffs and the Putative Class Members, including but not limited to, the decision to pay Plaintiff and the Putative Class Members an hourly wage with no overtime pay.

46. Midway reimbursed Plaintiffs and the Putative Class Members for expenses and bought or provided tools and equipment Plaintiffs and the Putative Class Members used. Specifically, Plaintiffs and the Putative Class Members received per diem in the amount of $100.00 for work-related expenses.

47. Plaintiffs and the Putative Class Members did not employ their own workers nor were they allowed to employ their own workers.

48. Plaintiffs and the Putative Class Members worked continuously for Midway on a permanent full-time basis.

49. Midway, instead of Plaintiffs and the Putative Class Members, made the large capital investments in vehicles, buildings, equipment, tools, and supplies. Moreover, Midway paid operating expenses like rent, payroll, marketing, insurance, and bills.

50. Plaintiffs and the Putative Class Members relied on Midway for their work. Plaintiffs and the Putative Class Members did not market any business or services of their own. Instead, Plaintiffs and the Putative Class Members worked the hours assigned by Midway, performed duties assigned by Midway, worked on projects assigned by Midway, and worked for the benefit of Midway and its customers.

51. Midway paid Plaintiffs and the Putative Class Members on a weekly basis. Plaintiffs and the Putative Class Members did not earn a profit based on any business investment of their own. Rather, Plaintiffs and the Putative Class Members' only earning opportunity was based on the number of hours they were allowed to work, which was controlled by Midway and/or its customers.

52. Midway improperly classified Plaintiffs and the Putative Class Members as independent contractors. The classification was improper because Plaintiffs and the Putative Class Members were not in business for themselves. Instead, they were economically dependent upon Midway for their work.

53. Plaintiffs and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

54. The FLSA and the PMWA mandate that overtime be paid at one and one-half times an employee's regular rate of pay.

55. Under the PMWA regular rate shall include all remuneration for employment paid to or on behalf of the employee, with exceptions that are inapplicable here. 34 Pa. Code § 231.43.

56. Midway denied Plaintiffs and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice. Plaintiffs and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

57. Midway applied this pay practice despite clear and controlling law that states that the manual labor/technical, routine duties which were performed by Plaintiffs and the Putative Class Members consisted of **<u>non-exempt</u>** work.

58. Accordingly, Midway's pay policies and practices blatantly violated (and continue to violate) the FLSA.

## V.
## CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

**A.  FLSA COVERAGE**

59. All previous paragraphs are incorporated as though fully set forth herein.

60. The FLSA Collective is defined as:

**ALL OILFIELD WORKERS WHO WORKED FOR MIDWAY OILFIELD CONSTRUCTORS, INC. D/B/A MIDWAY ENERGY SERVICES, AT ANY TIME FROM JULY 19, 2014 THROUGH THE FINAL DISPOSITION OF THIS CASE, AND WERE PAID HOURLY BUT DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("FLSA Collective" or "FLSA Collective Members").**

61. At all times hereinafter mentioned, Midway has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

62. At all times hereinafter mentioned, Midway has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

63. At all times hereinafter mentioned, Midway has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the

production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

64. During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Midway, these individuals provided services for Midway that involved interstate commerce for purposes of the FLSA.

65. In performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

66. Specifically, Plaintiffs and the FLSA Collective Members are (or were) **_non-exempt_** employees who worked for Midway and were engaged in oilfield services that were directly essential to the production of goods for Midway and related oil and gas companies. 29 U.S.C. § 203(j).

67. At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

68. In violating the FLSA, Midway acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

69. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 60.

70. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Midway.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA**

71.     All previous paragraphs are incorporated as though fully set forth herein.

72.     Midway violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) per workweek at rates at least one and one-half times the regular rates.

73.     Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Midway's acts or omissions as described herein; though Midway is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

74.     Moreover, Midway knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

75.     Midway knew or should have known its pay practices were in violation of the FLSA.

76.     Midway is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

77.     Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Midway to pay overtime in accordance with the law.

78.     The decision and practice by Midway to not pay overtime was neither reasonable nor in good faith.

79.     Accordingly, Plaintiffs and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. FLSA COLLECTIVE ACTION ALLEGATIONS

80. All previous paragraphs are incorporated as though fully set forth herein.

81. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

82. Other similarly situated employees have been victimized by Midway's patterns, practices, and policies, which are in willful violation of the FLSA.

83. The FLSA Collective Members are defined in Paragraph 60.

84. Midway's failure to pay any overtime compensation results from generally applicable policies and practices, and does not depend on the personal circumstances of the individual FLSA Collective Members.

85. Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

86. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

87. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

88. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the FLSA Collective Members are blue-collar oilfield workers entitled to overtime after forty (40) hours in a week.

89. Midway employed a substantial number of similarly situated oilfield workers since July 19, 2014. Upon information and belief, these workers are geographically dispersed, residing and working in locations across the United States. Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

90. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Midway will retain the proceeds of its rampant violations.

91. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

92. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 60 and notice should be promptly sent.

## COUNT TWO
### (Class Action Alleging Violations of the PWMA)

**A.  PMWA COVERAGE**

93. All previous paragraphs are incorporated as though fully set forth herein.

94. The PMWA Class is defined as:

**ALL OILFIELD WORKERS WHO WORKED FOR MIDWAY OILFIELD CONSTRUCTORS, INC. D/B/A MIDWAY ENERGY SERVICES IN PENNSYLVANIA, AT ANY TIME FROM JULY 19, 2014 THROUGH THE FINAL DISPOSITION OF THIS CASE, AND WERE PAID HOURLY BUT DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("PMWA Class" or "PMWA Class Members").**

95. At all times hereinafter mentioned, Midway has been an employer within the meaning of the PMWA, 43 P.S. § 333.103(f).

96. At all times hereinafter mentioned, Plaintiff Mark and the PMWA Class Members have been employees within the meaning of the PMWA, 43 P.S. § 333.103(g).

**B.  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE PWMA**

97. All previous paragraphs are incorporated as though fully set forth herein.

98. The PMWA requires that employees receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week.

99. Plaintiff Mark and other PMWA Class Members have not been exempt from receiving overtime benefits under the PMWA.

100. Plaintiff Mark and other PMWA Class Members worked more than forty (40) hours in workweeks during times relevant to this complaint, however, Midway violated the PMWA by failing to pay Plaintiffs and other class members any overtime premium for hours worked over forty (40) per week.

101. Plaintiff Mark and the PMWA Class Members have suffered damages and continue to suffer damages as a result of Midway's acts or omissions as described herein; though Midway is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

102. In violating the PMWA, Midway acted willfully, without a good faith basis and with reckless disregard of clearly applicable Pennsylvania law.

103. The proposed class of employees, i.e. putative class members sought to be certified pursuant to the PMWA, is defined in Paragraph 94.

104. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Midway.

**C. PMWA CLASS ALLEGATIONS**

105. Plaintiff Mark brings his PMWA claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Midway to work in Pennsylvania since July 19, 2014.

106. Class action treatment of Plaintiff Mark's PMWA claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

107. The number of PMWA Class Members is so numerous that joinder of all class members is impracticable.

108. Plaintiff Mark is a member of the PMWA Class, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

109. Plaintiff Mark and his counsel will fairly and adequately represent the class members and their interests.

110. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

111. Accordingly, the PMWA Class should be certified as in Paragraph 94.

## VI.
## RELIEF SOUGHT

Plaintiffs respectfully prays for judgment against Midway as follows:

a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 60 and requiring Midway to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b. For an Order certifying the PMWA Class as defined in Paragraph 94, and designating Plaintiff Mark as Representative of the PMWA Class;

c. For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

d. For an Order awarding Plaintiff (and those FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

e. For an Order pursuant to Section 16(b) of the FLSA finding Midway liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for attorneys' fees and costs;

f. For an Order pursuant to the PMWA awarding Plaintiff Mark and the PMWA Class Members unpaid overtime and other damages allowed by law;

g. For an Order awarding the costs and expenses of this action;

h. For an Order awarding attorneys' fees;

i. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

j. For an Order awarding Plaintiffs service awards as permitted by law;

k. For an Order compelling the accounting of the books and records of Midway, at Midway's own expense;

l. For an Order providing for injunctive relief prohibiting Midway from engaging in future violations of the FLSA and the PMWA, and requiring Midway to comply with such laws going forward; and

m. For an Order granting such other and further relief as may be necessary and appropriate.

Date: July 19, 2017

Respectfully submitted,

**ANDERSON2X, PLLC**

By: /s/ *Clif Alexander*
**Clif Alexander**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Federal I.D. No. 1122168
Texas Bar No. 24071993
lauren@a2xlaw.com
**Alan Clifton Gordon**
Federal I.D. No. 19259
Texas Bar No. 00793838
cgordon@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiffs and Putative Class Members***